UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JUA SMITH,

                Plaintiff,

    -against-                              9:17-CV-558 (LEK/TWD)

NEW YORK STATE, *et al.*,

                Defendants.

---

## DECISION AND ORDER

### I.    INTRODUCTION

Pro se plaintiff Jua Smith commenced this civil rights action pursuant to 42 U.S.C.

§ 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.

§ 2000cc. Dkt. No. 1 ("Complaint"). After reviewing the Complaint pursuant to 28 U.S.C.

§ 1915(e)(2)(B), the Court dismissed several of Plaintiff's claims and named defendants in a

Memorandum-Decision and Order filed on October 20, 2017. Dkt. No. 9 ("October 2017

Order"). Presently before the Court is Plaintiff's motion for reconsideration of the October 2017

Order. Dkt. Nos. 13 ("Motion"), 19 ("Memorandum"). For the reasons that follow, the Motion is

granted in part and denied in part.

### II.    BACKGROUND

Plaintiff commenced this action in May 2017. Compl. At that time, Plaintiff also filed a

motion to appoint counsel, an application to proceed in forma pauperis, and a motion for a

preliminary injunction. Dkt. Nos. 2 ("Counsel Motion"), 3 ("IFP Application"), 4 ("Preliminary

Injunction Motion"). The Court granted Plaintiff's IFP Application, and, pursuant to

§ 1915(e)(2)(B), partially dismissed the Complaint. Oct. 2017 Order at 38–42. The Court also

denied the Counsel Motion and directed Defendants to respond to the Preliminary Injunction Motion. Id.

On October 30, 2017, the Court received Plaintiff's Motion, as well as a letter partially correcting the Motion. Mot; Dkt. No. 14 ("Correction").[1] Plaintiff subsequently filed a notice of interlocutory appeal, Dkt. No. 15 ("Appeal"), which he later requested to withdraw, Dkt. No. 17 ("Motion to Withdraw"). On November 17, 2017, the United States Court of Appeals for the Second Circuit stayed the Appeal pending resolution of the Motion. Dkt. No. 21 ("Stay").

In his Motion, Plaintiff seeks partial relief from the October 2017 Order. He asks the Court to reconsider its initial review to construe the Complaint to assert state law claims for negligence and "denial of considerate and respectful care" against defendants Martuscello, Smith, Miller, Baldwin, and Rizzi, and a state law due process claim against Martuscello and Smith. Mem. at 4. Plaintiff also argues that the Court erroneously dismissed the following claims: (1) his First Amendment right of access to the courts claim; (2) the First and Fourteenth Amendment and RLUIPA claims challenging the state court force feed order; and (3) Plaintiff's substantive due process, equal protection, and RLUIPA claims against defendants Taillieur, Peters, Nepveu, McCarthy, Hotvet, DiFiore, New York State, the New York State Judiciary, the New York Attorney General, and the New York State Department of Corrections and Community Supervision ("DOCCS"). Mem. at 5–21.

---

[1] Plaintiff's Motion seeks reconsideration of the October 2017 Order to the extent that it dismissed his access to the courts claim. Mot. However, his subsequently filed Memorandum presents additional arguments related to the dismissal of other claims. Mem. The Court considers the arguments raised in both submissions in deciding the Motion.

III.    **LEGAL STANDARD**

"A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice." Delaney v. Selsky, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (citing Doe v. New York City Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983)). The standard for granting a motion for reconsideration is strict, and "should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Courts generally deny motions for reconsideration unless "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Id. Thus, a motion for reconsideration is not a means for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998) (citing United States v. Local 1804-1, 831 F. Supp. 167, 169 (S.D.N.Y.1993)).

IV.    **DISCUSSION**

Plaintiff does not suggest that there has been an intervening change in the controlling law, nor has he presented previously unavailable evidence. Therefore, the only basis for reconsideration is to remedy a clear error of law or prevent manifest injustice. After thoroughly reviewing Plaintiff's Motion and affording it due consideration in light of his status as a pro se litigant, the Court concludes that he has justified partially modifying the October 2017 Order.

### A. Claims for Relief Under New York Law

Plaintiff contends that the Court erred in not construing the Complaint to have asserted state law claims for negligence, "denial of considerate and respectful care," and violation of New York State due process. Mem. at 4. His negligence claim against Martuscello, Smith, Miller, Baldwin, and Rizzi is based on his allegation that these defendants "repeatedly" force fed plaintiff using "a too-large n.g. tube, without aenesthetic [sic], which caused bleeding and swelling in addition to great pain and suffering." Compl. at 148. Plaintiff appears to plead negligence as an alternative to his First Amendment retaliation and Eighth Amendment claims, not as an independent claim. To the extent that these defendants did not intentionally injure him during the force feeding, he alleges, their conduct was negligent. Id. at 148–49 ("Even if the above-described actions regarding the force feeding were unintentional they constitute . . . negligence . . . under New York law."). Plaintiff has not identified any authority indicating that New York recognizes a cause of action for "denial of considerate and respectful care," and the Court is aware of none. Thus, the Court does not construe Plaintiff's claim regarding "denial of considerate and respectful care" to be an independent state law claim. It appears to be duplicative of Plaintiff's negligence claim.

Although claims of negligence are not cognizable under § 1983, Arroyo v. City of New York, No. 99-CV-1458, 2003 WL 22211500, at *2 (S.D.N.Y. 2003) (citing Estelle v. Gamble, 429 U.S. 97, 105–06 (1976)), a court may exercise supplemental jurisdiction over such a pendent state law cause of action pursuant to 28 U.S.C. § 1367, e.g., O'Diah v. Mawhir, No. 08-CV-322, 2010 WL 6230937, at *7 (N.D.N.Y. Dec. 14, 2010), adopted by, 2011 WL 933846 (N.D.N.Y. Mar. 16, 2011). The Court did not directly address Plaintiff's alternative negligence theory in the

October 2017 Order. Because Plaintiff's negligence claim arises out of the same facts upon which his federal claim for medical indifference is based, the Court will exercise supplemental jurisdiction over this claim as an alternative to his First Amendment retaliation and Eighth Amendment claims.

The Court, however, reaches a different conclusion regarding Plaintiff's due process claim under New York law. Article I, § 6 of the New York State Constitution provides, in part, that "[n]o person shall be deprived of life, liberty or property without due process of law." N.Y. Const. art. I, § 6. While the Fourteenth Amendment to the United States Constitution contains similar language, the two provisions are not identical. In addition, "New York courts have interpreted Article I, § 6 of the New York Constitution more broadly than federal courts have interpreted the federal counterpart." Green v. New York City Dep't of Correction, No. 97-CV-8191, 1999 WL 4961, at *4 (S.D.N.Y. Jan. 6, 1999) (citing Under 21 v. City of New York, 482 N.E.2d 1, 7 n.6 (N.Y. 1985)). As stated in Green, "[g]iven this fact, and the requirement that the Court be mindful of federal-state comity concerns, it is preferable that any interpretation of this provision of New York's constitution be left to the New York courts." Id. ("It would be imprudent for the Court to undertake to prepare an exegesis on New York State constitutional law when such an endeavor is unnecessary to the resolution of the claims made in this action.").

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law due process claim.

**B.  First Amendment Right of Access to Courts Claim**

Plaintiff next contends that the Court erred in dismissing his access to the courts claim.
He argues that the Complaint plausibly suggests that Plaintiff has had inadequate access to the
law library, which has "prejudiced" his ability to litigate the present action. Mem. at 5–7.[2]
Plaintiff separately argues that he had inadequate law library access at the time the initial state
court force feed order was set to expire, which prevented him from understanding (1) his
obligation to fully exhaust his administrative remedies before filing a petition for an injunction
seeking to stop DOCCS from obtaining a new force feed order and/or commence an action in
federal court, and (2) the consequences, under the Rooker-Fedlman doctrine, of not properly
pleading a RLUIPA claim in state court or bringing his RLUIPA claim in federal court before the
state court issued the force feed order. Mem. at 8–14.

Inmates have a "fundamental constitutional right of access to the courts." Lewis v. Casey,
518 U.S. 343, 346 (1996). A denial of access claim may arise from the frustration or hindrance of
"a litigating opportunity yet to be gained" (a forward-looking access claim) or from the loss of a
meritorious suit that cannot now be tried (a backward-looking claim). Christopher v. Harbury,
536 U.S. 403, 412–15 (2002). Regardless of whether the claim looks backward or forward, a
plaintiff asserting a denial of access claim must identify (1) a non-frivolous, arguable underlying
claim, and (2) make allegations that "describe the official acts frustrating the litigation[.]" Id.
at 415. In addition, "when the access claim . . . looks backward, the complaint must identify a

---

[2]  Plaintiff contends that he has experienced deprivations that are "virtually identical to
those deemed to be 'unconstitutional conditions'" in Griffin v. Coughlin, 743 F. Supp. 1006
(N.D.N.Y. 1990). Mem. at 5–6.

remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Id.

Plaintiff identifies his RLUIPA claim as the non-frivolous underlying claim that he states he was prevented from properly raising due to inadequate access to the law library. Mem. at 12–14. Liberally construed, Plaintiff's backward-looking claim is that he lacked adequate access to the law library at the time the initial state court force feed order was set to expire, and, as a result, did not know how to properly present his RLUIPA claim as a defense against the petition seeking a re-issuance of the force feed order. Compl. at 27–31, 84, 90, 102, 104–109.

As an initial matter, access to a law library is "merely 'one constitutionally acceptable method to assure meaningful access to the courts.'" Lewis, 518 U.S. at 350–51 (quoting Bounds v. Smith, 430 U.S. 817 (1977)). As the Supreme Court noted in Bounds, "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." 430 U.S. at 828 (emphasis added). Because Plaintiff was represented by counsel prior to the hearing regarding the renewal of the force feed order, Compl. at 86–92, he was provided meaningful access to the courts notwithstanding any inability to access the law library.

Moreover, the Complaint does not allege facts plausibly suggesting that inadequate access to the law library prevented Plaintiff from advancing his RLUIPA claim in the state court action as a defense to the application for the force feed order. Rather, Plaintiff alleges that he *did* raise his RLUIPA claim, but the state court improperly construed his counterclaims and defenses. Compl. at 108–09. The Complaint also notes that the state court, in deciding the petition for the

7

force feed order, "acknowledged" Plaintiff's "religious freedom claim in regards to [his] right to die by starvation." Id. at 108. Thus, the Complaint fails to allege facts which plausibly suggest that Plaintiff's ability to advance a RLUIPA claim in the state court proceeding was frustrated by inadequate law library access. See Tulloch v. Erie Cty. Holding Ctr., No. 10-CV-207S, 2010 WL 2609054, at *4 (W.D.N.Y. June 24, 2010) (stating that a "plaintiff must show that he has suffered an actual injury traceable to the challenged conduct of prison officials" and "that a 'nonfrivolous legal claim had been frustrated or was being impeded' due to the actions of prison officials" (quoting Lewis v. Casey, 518 U.S. 343, 351–52 (1996))); Collins v. Goord, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) ("In order to establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in actual injury to the plaintiff.").

In any event, the Court cannot vacate the state court force feed order based on Plaintiff's backward-looking inadequate access to the courts claim because such relief is barred by Rooker-Feldman. See Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994) (stating that the Rooker-Feldman doctrine bars "a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights").

For all of these reasons, the Court declines to reconsider its determination that the Complaint failed to state a backward-looking denial of access to the courts claim.

Similarly, the Court declines to reconsider its determination that the Complaint does not state a forward-looking denial of access to the courts claim. At best, the Complaint alleges facts suggesting that Plaintiff currently lacks adequate access to the law library, and may suffer harm

in the future as a result. Compl. at 27–30. However, the Supreme Court has explicitly disavowed the existence of "an abstract, freestanding right to a law library or legal assistance." Lewis, 518 U.S. at 351–52 (explaining that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense," but "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim"); see also Flynn v. Ward, No. 15-CV-1028, 2016 WL 1357737, at *7 (N.D.N.Y. Apr. 5, 2016) ("The constitutional right to access to the courts encompasses the right to meaningful access to legal materials, not physical access to a law library."). Thus, Plaintiff has not alleged facts plausibly suggesting that he has suffered an actual injury with respect to litigating the present action as a result of inadequate law library access. See, e.g., Lewis, 518 U.S. at 360 n.7 ("Courts have no power to presume and remediate harm that has not been established."); Abreu v. Travers, No. 15-CV-540, 2016 WL 6127510, at *11 (N.D.N.Y. Oct. 20, 2016) (dismissing an access to the courts claims where the incarcerated pro se plaintiff alleged that he "was denied legal materials and supplies, and some of his legal papers were destroyed" because "[e]ven accepting plaintiff's allegations as true, he nevertheless offer[ed] no facts to suggest how the denial or destruction of legal materials 'prejudiced his ability to seek redress from the judicial system'").

Accordingly, the Court concludes that its previous decision dismissing Plaintiff's access to the courts claim was legally correct and did not work a manifest injustice. Thus, Plaintiff's Motion is denied to the extent he seeks reinstatement of this claim.

### C.  Claims Challenging the State Court Force Feed Order

Plaintiff argues that the Court should not have dismissed his claims challenging the state court force feed order under the Rooker-Feldman doctrine because that doctrine does not apply where a plaintiff presents an independent claim not based on an injury caused by the state court judgment. Mem. at 12–14. Plaintiff argues that his "'independent claim' is that RLUIPA allows [him] to die by starvation" despite the New York Court of Appeals's decision in Bezio v. Dorsey, 989 N.E.2d 942 (N.Y. 2013), which permits force feeding prisoners, and the Second Circuit's decision in Grand Jury Subpoena John Doe v. United States, 150 F.3d 170 (2d Cir. 1998), holding that a court force feed order does not violate a hunger striking prisoner's constitutional rights. Mem. at 12–15.

As the Second Circuit stated in Hoblock v. Albany County Board of Elections, 422 F.3d 77 (2d Cir. 2005), there are "a set of federal suits—those raising 'independent claims'—that are outside Rooker-Feldman's compass even if they involve the identical subject matter and parties as previous state-court suits." Id. at 86. Whether a complaint raises such "independent claims" turns on whether the plaintiff alleges an "injury caused by a state judgment," which would subject him to the Rooker-Feldman bar. Id. at 87; see also McKithen v. Brown, 481 F.3d 89, 97–98 (2d Cir. 2007) ("[T]he applicability of the Rooker-Feldman doctrine turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court.").

Here, Plaintiff seeks to invalidate the state court force feed order under a variety of legal theories. In essence, Plaintiff claims that he has been injured by the state court order because it

allows employees at Coxsackie C.F. to force feed him, which he claims violates his right to die

by starvation. E.g., Compl. at 144. This is not a case where "the state court chose not to remedy

the injury" (which would not be barred by Rooker-Feldman). Hoblock, 422 F.3d at 87–88.

Plaintiff's injury is caused by the state court order, which compels his feeding. As such, the

Rooker-Feldman doctrine precludes this Court from considering any of Plaintiff's claims that

challenge the state court judgment. See id. at 87 (discussing the example of "a state court, based

purely on state law, terminat[ing] a father's parental rights and order[ing] the state to take

custody of his son[,]" and explaining that the father suing "in federal court for the return of his

son on grounds that the state judgment violates his federal substantive due-process rights as a

parent" is a complaint "of an injury caused by the state judgment," barred by Rooker-Feldman).

Accordingly, the Court concludes that its previous decision dismissing Plaintiff's claims

challenging the state court force feed order was proper and did not work a manifest injustice.

Thus, Plaintiff's Motion is denied to the extent it seeks reinstatement of these claims.

**D.  Substantive Due Process, Equal Protection, and RLUIPA Claims Against the Dismissed Defendants**

Plaintiff argues that the Court improperly dismissed his substantive due process, equal

protection, and RLUIPA claims against defendants Taillieur, Peters, Nepveu, McCarthy, Hotvet,

DiFiore, New York State, the New York State Judiciary, the New York Attorney General, and

DOCCS.[3] As set forth in the October 2017 Order, each of these defendants is immune from suit.

---

[3]   The Court did not previously construe the Complaint to assert a substantive due process claim against these defendants, which Plaintiff contends was also in error. Mem. at 17–18. The Court will not separately undertake a substantive due process analysis in this Decision and Order because all claims against these defendants are subject to dismissal on immunity grounds, as explained in the October 2017 Order.

Oct. 2017 Order at 17–21. Plaintiff offers no reason to depart from this conclusion or explain

why immunity does not apply to these defendants. Mem. at 16–21. Moreover, to the extent

Plaintiff's Motion can be interpreted to argue more generally that Plaintiff has stated claims for

relief under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the

Court disagrees for the reasons stated in the October 2017 Order.

V.    **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion (Dkt. No. 13) is **GRANTED in part** and **DENIED**

**in part**; and it is further

**ORDERED**, that Plaintiff's Motion is **GRANTED** with respect to his negligence claim

against defendants Martuscello, Smith, Miller, Baldwin, and Rizzi, which **SURVIVES** initial

review and requires a response from these defendants. The Court construes the Complaint to

plead negligence as an alternative to Plaintiff's First Amendment retaliation and Eighth

Amendment claims. Plaintiff's Motion is otherwise **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall provide Plaintiff with copies of the

unpublished decisions cited in this Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Decision and Order on

all parties pursuant to the Local Rules.

**IT IS SO ORDERED.**

DATED:    January 10, 2018
          Albany, New York

Lawrence E. Kahn
U.S. District Judge