UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JUA SMITH,

                                Plaintiff,

    -against-                                                 9:17-CV-558 (LEK/TWD)

NEW YORK STATE, *et al.*,

                                Defendants.

## **DECISION AND ORDER**

### I.     INTRODUCTION

Pro se Plaintiff Jua Smith commenced this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, alleging that wrongdoing occurred while he was incarcerated at Coxsackie Correctional Facility ("Coxsackie C.F."). Dkt. No. 1 ("Complaint"). As part of this action, Plaintiff moved for a preliminary injunction directing prison officials to re-classify him as a maximum security level A inmate and to make changes to his housing assignments and prison privileges. Dkt. No. 4 ("Preliminary Injunction Motion").[1]

On August 20, 2018, the Court denied Plaintiff's Preliminary Injunction Motion. Dkt. No.

---

[1] On October 20, 2017, the Court granted Plaintiff's application to proceed in forma pauperis, dismissed some of his claims, and directed service and a response from the remaining defendants to the claims that survived sua sponte review and the Preliminary Injunction Motion. Dkt. No. 9 ("October 2017 Order"). Plaintiff subsequently filed an amended complaint. See Dkt. No. 34 ("Amended Complaint"). On March 13, 2018, the Court found that all of the claims asserted in the original Complaint that survived the Court's October 2017 Order, and certain additional claims, survived sua sponte review and required a response. Dkt. No. 39 ("March 2018 Order"). Thereafter, Defendants opposed Plaintiff's Preliminary Injunction Motion and Plaintiff submitted a reply in further support of his motion. Dkt. Nos. 61 ("Response in Opposition to Preliminary Injunction Motion"), 62 ("Reply in Support of Preliminary Injunction Motion").

70 ("August 2018 Order") at 4. It held that Plaintiff was not entitled to injunctive relief directing that the New York State Department of Corrections and Community Supervision ("DOCCS") re-classify him as a maximum security level A inmate because he did not establish a likelihood of success on the merits of his claim seeking re-classification. August 2018 Order at 3–4.

Plaintiff, believing the Court committed a legal error in its determination, then made three additional filings. First, he moved for reconsideration of the August 2018 Order, which Defendants opposed. See Dkt. Nos. 73 ("First Motion for Reconsideration of the August 2018 Order"), 76 ("Opposition to First Motion for Reconsideration of the August 2018 Order"). Second, he filed a reply in further support of the First Motion for Reconsideration of the August 2018 Order, in which he offered new evidence regarding his transfer to a medium security correctional facility. Dkt. No. 83 ("Reply in Support of First Motion for Reconsideration of August 2018 Order"). Third, Plaintiff filed a motion to amend his Amended Complaint, together with a Proposed Second Amended Complaint. See Dkt. No. 77 ("Motion to Amend"); Dkt. Nos. 77-2 and 77-3 (collectively, "Proposed Second Amended Complaint" or "Proposed SAC").

On November 26, 2018, the Court denied Plaintiff's First Motion for Reconsideration of the August 2018 Order. Dkt. No. 85 ("First November 2018 Order"). In so doing, the Court explained why Plaintiff was unlikely to succeed on the merits of a RLUIPA claim based on the state's re-classification of him as a medium security inmate. Id. at 2–3. Applying the legal standard governing his RLUIPA claim (which was previously recited to Plaintiff in the October 2017 Order), the Court explained:

> Plaintiff's beliefs that he is innocent of the crime of conviction, and that he should serve the rest of his life in prison in a maximum security level A facility unless he is exonerated, do not show that he

> is likely to succeed on the merits of his claim that the State has substantially burdened his sincerely held religious beliefs by classifying him as a medium security inmate pursuant to its policies."

Id. at 3.[2]

Thereafter, Plaintiff again asked the Court to reconsider and to direct prison officials to re-classify him as a maximum security level A inmate. See Dkt. No. 87 ("Second Motion for Reconsideration of the August 2018 Order"). On February 7, 2019, the Court denied Plaintiff's Second Motion for Reconsideration of the August 2018 Order, which had denied the preliminary injunction. Dkt. No. 97 ("February 2019 Order").

While the Second Motion for Reconsideration of the August 2018 Order was pending, the Court issued an order addressing Plaintiff's Motion to Amend and the sufficiency of the Proposed SAC. See Dkt. No. 91 ("January 2019 Order"). With respect to Plaintiff's RLUIPA claim asserted in the Proposed SAC, the Court noted that Plaintiff sought re-classification as a "maximum security level-a" inmate "housed exclusively in a max-a prison" and alleged that classifying him as anything other than a "maximum security level-a" inmate imposed a substantial burden on his sincerely held religious beliefs. See January 2019 Order at 14–15. The Court then expounded upon language from the First November 2018 Order to explain why dismissal of the RLUIPA claim was appropriate. More specifically, the Court stated as follows:

> The fact that Plaintiff may believe that he is innocent, and that he should serve the rest of his life in prison unless he is exonerated, does not mean that the state has substantially burdened his sincerely held religious belief by classifying him as a medium security inmate pursuant to its policies or otherwise following the terms of the prison

---

[2] Later that day, the Honorable Judge Therese Wiley Dancks, United States Magistrate Judge, stayed all discovery and dispositive motion deadlines until after the Court issued decisions on pending motions. Dkt. No. 86 ("Second November 2018 Order").

> sentence imposed upon him. Moreover, Plaintiff has not alleged facts
> plausibly suggesting that the decision to classify Plaintiff in a way
> that is contrary to his preference has forced him to change his belief
> in his innocence, or that an innocent man should not be paroled.

Id. at 15.

Shortly thereafter, Plaintiff filed a Motion for Reconsideration of this January 2019 Order dismissing the RLUIPA claim, which is the first motion now before the Court for review. See Dkt. No. 96 ("Motion for Reconsideration of the January 2019 Order"). In that motion, Plaintiff alternatively asks the Court for leave to file an interlocutory appeal of the January 2019 Order. Id.

On February 7, 2019, Plaintiff filed a motion for Rule 11 sanctions, which is the second motion before the Court for review. Dkt. No. 100 ("Motion for Sanctions"). Plaintiff also filed a motion for reconsideration of the February 2019 Order (which was itself a second reconsideration of the August 2018 Order denying preliminary injunction), which is the third motion before the Court for review. See Dkt. No. 101 ("Third Motion for Reconsideration of the August 2018 Order").

## II. MOTIONS FOR RECONSIDERATION

The legal standard governing motions for reconsideration was discussed at length in the First November 2018 Order and it will not be restated here. See First Nov. 2018 Order at 2.

### A. Motion for Reconsideration of the January 2019 Order

Plaintiff seeks reconsideration of the January 2019 Order with respect to the Court's dismissal of his RLUIPA and state law claims. With respect to Plaintiff's RLUIPA claim, he alternatively seeks leave to file an interlocutory appeal of the January 2019 Order.

*1. RLUIPA Claim*

In his motion, Plaintiff clarifies that his protected "belief" is that he is an innocent person whose "innocence dictates that [he] shall not seek or accept parole." Mot. for Recons. of Jan. 2019 Order at 8. Plaintiff argues that the Court incorrectly found that his classification did not burden his belief and erred in analyzing "the substantial burden question . . . on whether the burden(s) pled have caused the plaintiff to, in essence, stop believing." Id. at 8–9. Plaintiff states that "the change in [his] conditions of confinement—from a max-a to a max-b or medium—and the loss of the max-a classification itself, and the resultant loss of privileges and benefits," is what "puts substantial pressure on [his] commitment to refuse parole until [he] die[s] in prison, or [is] exonerated." Id. at 11.

As an initial matter, the Court did not, as Plaintiff contends, "recognize[ ] and credit[ ] [Plaintiff's] sincerely held beliefs" as "religious beliefs" in the January 2019 Order. Id. at 8. Rather, the Court analyzed Plaintiff's RLUIPA claim by focusing on whether the allegations in the Proposed SAC plausibly suggested that DOCCS' failure to classify Plaintiff as anything other than a "maximum security level-a" inmate placed a substantial burden on his claimed belief that he is innocent and should serve the rest of his life in prison unless he is exonerated. See Jan. 2019 Order at 15. In any event, Plaintiff's argument that the Court erred in analyzing the "substantial burden" element of his RLUIPA claim misunderstands the relevant legal standard.

As this Court has previously noted, RLUIPA prohibits the government from imposing a "substantial burden" on a prisoner's "religious exercise" unless the burden is the least restrictive means of furthering a compelling governmental interest. See Oct. 2017 Order at 33. "For a burden to be substantial, a plaintiff must demonstrate that the government's action pressures him

5

to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith. In addition, this interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." Brown v. Graham, No. 9:07-CV-1353, 2010 WL 6428251, at *15 (N.D.N.Y. Mar. 30, 2010), report and recommendation adopted by 2011 WL 1213482 (N.D.N.Y. Mar. 31, 2011), aff'd, 470 Fed. App'x 11 (2d Cir. 2012).

Plaintiff alleges in the Second Amended Complaint that his confinement as a max-a inmate "provide[s] the necessary stress-reducing factors essential to [his] mental health and well-being," and his confinement as a max-b or medium security inmate "induce[s] stress." Dkt. No. 92 ("Second Amended Complaint" or "SAC") at 17–18. The SAC identifies the stress-reducing factors associated with confinement as a max-a inmate to include the "comradery" with fellow inmates, an honor block with extended recreation, shower and cooking privileges, a family reunion program, and single cells where cell-to-cell talking and televisions are permitted. Id.

The SAC lacks any allegations that plausibly suggest that the privileges Plaintiff identifies as being associated with "max-a" classification are necessary for Plaintiff to exercise his "religious belief." Moreover, there are no allegations in the SAC that Plaintiff's inmate classification has forced him to commit an act forbidden by his religion, or prevented him from engaging in conduct or having a religious experience mandated by his faith. Rather, Plaintiff's allegations plausibly suggest only that his classification impacts his mental health and well-being, and the more he is subject to stress, the more he feels "substantial pressure" to reconsider his "commitment to refuse parole until [he] die[s] in prison, or [is] exonerated."

Plaintiff does not need to show he was forced to change his beliefs to demonstrate a

6

"substantial burden." But the law is clear that the substantial burden created by Government action (in this case Plaintiff's inmate classification) must be on an individual's "religious exercise," not on an individual's personal feelings that in turn impact his desire to exercise his religious beliefs. See Navajo Nation v. U. S. Forest Service, 535 F.3d 1058, 1063 (9th Cir. 2008) (en banc) ("[A] government action that decreases the spirituality, the fervor, or the satisfaction with which a believer practices his religion is not what Congress has labeled a 'substantial burden' . . . on the free exercise of religion. Where, as here, there is no showing the government has coerced the Plaintiffs to act contrary to their religious beliefs under the threat of sanctions, or conditioned a governmental benefit upon conduct that would violate the Plaintiffs' religious beliefs, there is no 'substantial burden' on the exercise of their religion."), cert. denied, 556 U.S. 1281 (2009); Antonio v. Henry, No. 13-CV-528, 2015 WL 9918689, at *5 (N.D. Fla. Dec. 18, 2015) ("[P]laintiff does not allege any impact, much less a substantial burden, on his exercise of religion for purposes of RLUIPA. . . . [P]laintiff merely expresses a preference for where he would like to be housed while serving his prison sentence, and then disguises that preference as a free exercise claim. Plaintiff's conclusory assertion that his rights under RLUIPA were violated by defendant Shipman's removing him from the faith-based dormitory is insufficient to survive dismissal."), report and recommendation adopted by 2016 WL 309819 (N.D. Fla. Jan. 25, 2016).

Thus, the alleged burden on Plaintiff's "mental health and well-being" associated with his place of confinement does not plausibly suggest that any defendant has placed a substantial burden on Plaintiff's "religious belief" by classifying him as something other than a "max-a" inmate. Plaintiff does not provide a basis for reconsidering the portion of the January 2019 Order that denied Plaintiff's request to assert a RLUIPA claim to address his inmate classification.

7

*2. State Law Claims*

Plaintiff argues that the Court incorrectly relied on New York Correction Law § 24 to dismiss his state law claim that defendants Martuscello, Barringer, and Kenneweg violated his rights under 9 NYCRR § 7031.4 by denying him access to legal materials. Mot. for Recons. of Jan. 2019 Order at 18–20. Plaintiff argues that dismissal was inappropriate because New York Correction Law § 24 "only concerns claims for damages" and the SAC contains "a request for declaratory judgment against defendants in their official capacity for violating Titles 7 and 9 of the New York Code of Rules and Regulations, parts 251-254 and 7031.4, respectively." Id. at 19–20.

In Part IV.B.7 of the January 2019 Order, the Court noted as follows:

> "In the context of a claim for injunctive or declaratory relief, a plaintiff's allegation of past injury is insufficient to establish standing; instead the plaintiff must show a likelihood of future harm, a 'real and immediate threat of repeated injury.'" Azim v. Vance, 530 Fed. App'x 44, 45 (2d Cir. 2013) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102, 104 (1983) (internal quotation marks omitted)); O'Shea v. Littleton, 414 U.S. 488, 493-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."); Parkell v. Senato, 704 Fed. App'x 122, 125 (3d Cir. 2017) ("declaratory relief . . . is 'by definition prospective in nature,' . . . and cannot be issued to address past wrongs" (quoting CMR D.N. Corp. v. City of Philadelphia, 703 F.3d 612, 628 (3d Cir. 2013)) (summary order); Degale v. McDonough, No. 16-CV-9905, 2018 WL 2943224, at *3 (S.D.N.Y. June 12, 2018) ("Plaintiff cannot seek injunctive or declaratory relief because there is no continuing burden on plaintiff's religious practice—the challenged beard-shaving procedure occurs only upon intake.").

See January 2019 Order at 14.

The SAC seeks a declaratory judgment against Martuscello, Barringer, and Kenneweg

8

declaring that they "deprived the plaintiff of physical access to the law library and sufficient access to legal reference material, to create an incentive for him to quit his hunger strike, in violation of . . . Title 7 NYCRR, parts 251–254, Title 9 NYCRR, part 7031.4, infringing his ability to seek redress and compensation." See SAC at 69–70.

These allegations, based on alleged conduct that occurred in 2013 during Plaintiff's incarceration at Coxsackie C.F., relate entirely to a past injury. As noted, "declaratory relief . . . is 'by definition prospective in nature,' . . . and cannot be issued to address past wrongs." Parkell, 704 F. App'x at 125 (quoting CMR D.N. Corp., 703 F.3d at 628) (summary order). Thus, the Court did not err in dismissing Plaintiff's state law claims. Plaintiff provides no basis to reconsider the portion of the January 2019 Order that denied Plaintiff's request to assert these state law claims.

### 3. Interlocutory Appeal

Under 28 U.S.C. § 1292, an interlocutory order may be immediately appealed if the district court certifies that the order meets the statute's stringent standard:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). "Routine resort to 28 U.S.C. § 1292(b) is disfavored as interlocutory review is designed for 'exceptional cases.'" John and Vincent Arduini Inc. v. NYNEX, 129 F. Supp. 2d 162, 175 (N.D.N.Y. 2001) (Kahn, J.) (citations omitted).

The determination of the legal standard governing Plaintiff's RLUIPA claim (and

dismissal of that claim in the SAC) does not involve "a controlling question of law as to which there is substantial ground for difference of opinion," nor is there any evidence in the record that an immediate appeal of this issue would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Plaintiff's request for certification of an interlocutory appeal of the January 2019 Order is therefore denied.

### B. Third Motion for Reconsideration of the August 2018 Order

In Plaintiff's Third Motion for Reconsideration of the August 2018 Order, he reiterates his argument that the Court committed a legal error in its analysis of his RLUIPA claim (and the determination that Plaintiff is not entitled to injunctive relief based on that now dismissed claim).

As discussed above, the Court did not commit a clear error of law in dismissing Plaintiff's RLUIPA claim asserted in his SAC. Moreover, the dismissal of Plaintiff's RLUIPA claim moots his request for injunctive relief related to his inmate classification. Thus, Plaintiff's motion does not afford a basis for reconsideration of the Court's prior decisions denying him injunctive relief related to his inmate classification.

### III. MOTION FOR SANCTIONS

Plaintiff's Motion for Sanctions is based on his claim that defense counsel violated Rule 11(b) of the Federal Rules of Civil Procedure by making "reckless misstatements of law and fact in order to confuse and/or deceive the Court and prejudice the plaintiff, and employ[ing] frivolous and vexatious arguments" in opposing Plaintiff's Second Motion for Reconsideration of the August 2018 Order. Dkt. No. 100 at 7–10. Plaintiff argues that defense counsel's opposition is sanctionable because (1) counsel wrongly argued to the Court that Plaintiff's First Motion for Reconsideration of the August 2018 Order was "the first time that the plaintiff

claimed that [his] classification claim was part of his RLUIPA cause of action," (2) counsel wrongly argued that Plaintiff "admitted to the classification controversy being moot," and (3) counsel "frivolous[ly]" argued that Plaintiff failed to demonstrate a clear error of law in his Second Motion for Reconsideration of the August 2018 Order. Id. at 8–10.[3]

Rule 11(a) of the Federal Rules of Civil Procedure requires that pleadings, motions, and other papers presented to the court be signed, either by an attorney of record or, if the party is unrepresented, by the pro se litigant. Fed. R. Civ. P. 11(a). By signing such a paper, including a written motion or opposition to a motion, the attorney or party certifies to the court that:

> to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances . . . (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support . . . ; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

The Court may "impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Ultimately, the decision to impose Rule 11 sanctions rests in the sound discretion of the court, and 'should be imposed with caution.'" Murawski v. Pataki, 514 F. Supp. 2d 577, 590 (S.D.N.Y. 2007) (citation omitted) (quoting Knipe v. Skinner, 19 F.3d 72, 78 (2d Cir. 1994)).

"A test of objective unreasonableness is employed to assess whether conduct is sanctionable; that is, the conduct must be 'totally without merit or utterly lacking in support.'"

---

[3] Defense counsel has opposed Plaintiff's motion. See Dkt. No. 104.

Welch, 2008 WL 238553, at *7 (quoting Ehrich, 210 F.R.D. at 26). "The alleged improper conduct should be assessed based on the following factors: 1) whether the conduct was willful or negligent; 2) whether the conduct reflected a pattern of behavior or an isolated event; 3) whether the conduct infected the entire proceeding; 4) whether the individual engaged in similar conduct in the past; and 5) the effect on the litigation in time or expense." Id.

The Court does not find any of the arguments raised by defense counsel in counsel's opposition to Plaintiff's Second Motion for Reconsideration of the August 2018 Order to have been willfully misleading or frivolous. Moreover, Plaintiff has not demonstrated (nor do counsel's prior submissions suggest) that the claimed misconduct was part of a pattern of behavior. Counsel's arguments also did not "infect" the proceedings in this action, or result in increased litigation efforts or expenses.

Thus, the imposition of sanctions is unwarranted. Plaintiff's Motion for Sanctions is denied.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion for Reconsideration of the January 2019 Order (Dkt. No. 96) is **DENIED** in all respects; and it is further

**ORDERED**, that Plaintiff's alternative request in his Motion for Reconsideration of the January 2019 Order (Dkt. No. 96) for leave to file an interlocutory appeal of the January 2019 Order is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Third Motion for Reconsideration of the August 2018 Order (Dkt. No. 101) is **DENIED** in all respects; and it is further

**ORDERED**, that Plaintiff's Motion for Sanctions (Dkt. No. 100) is **DENIED**; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED.**

DATED:	May 14, 2019
	Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge