**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JUA SMITH,

                                        Plaintiff,                    9:17-cv-00558
                                                                      (AMN/TWD)

v.

ANTHONY J. ANNUCCI, et al.,

                                        Defendants.

**APPEARANCES:**                                  **OF COUNSEL:**

**JUA SMITH**
98-A-0346
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821
Plaintiff, *Pro Se*

**HON. LETITIA JAMES**                            MATTHEW GALLAGHER, ESQ.
New York State Attorney General                   BRITTANY M. HANER, ESQ.
The Capitol                                       Assistant Attorneys General
Albany, NY 12224
*Attorney for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.      INTRODUCTION

On May 22, 2017, Plaintiff *pro se* Jua Smith commenced this action pursuant to 42 U.S.C.

§ 1983, alleging various constitutional, statutory, and common law claims stemming from

incidents that occurred while he was incarcerated at Coxsackie Correctional Facility.  *See* Dkt. No.

1.[1]   Plaintiff sought leave to proceed *in forma pauperis* ("IFP"), and on October 20, 2017, the

Court granted Plaintiff's application.  Dkt. Nos. 3, 9.[2]   Nine claims survived the Court's initial

review of the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b),[3] and upon

Plaintiff's motion for reconsideration, the Court construed the Complaint to also make out a claim

for negligence as an alternative cause of action to Plaintiff's First Amendment retaliation and

Eighth Amendment claims.  Dkt. No. 31 at 12.   On January 18, 2018, Plaintiff filed his First

Amended Complaint ("FAC").  Dkt. No. 34.  The Court found that all of the claims asserted in the

original Complaint that survived initial review and the negligence claim survived in the FAC along

with three additional claims.  Dkt. No. 39.[4]   On September 27, 2018, Plaintiff filed a motion to

---

[1] Citations to Court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

[2] For a recitation of the relevant background and procedural history, the Parties are referred to Magistrate Judge Dancks' Order and Report-Recommendation ("Report-Recommendation").  *See* Dkt. No. 208 at 2-5.  Herein, each Defendant is referred to by his or her last name in the same manner as in the Report-Recommendation.  *See generally id.*

[3] The following claims survived 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) review: (1) a request for injunctive relief against Martuscello and Annucci in their official capacities with respect to restoration of Plaintiff's privileges; (2) Eighth Amendment medical indifference claims against Martuscello, Smith, Miller, Baldwin, and Rizzi; (3) Eighth Amendment conditions-of-confinement claims against Martuscello and Smith; (4) Fourteenth Amendment due process claims against Martuscello and Smith regarding Plaintiff's infirmary confinement; (5) First Amendment retaliation claims against Barringer, Kennewig, Raymond, Arvenson, Wagner, Jackson, Barnes, Martuscello, Smith, Miller, Baldwin, Rizzi, Annucci, and Almasi; (6) First Amendment free exercise claims against Annucci, Martuscello, Smith, Miller, Baldwin, and Rizzi; (7) the claim that Almasi retaliatorily denied Plaintiff access to materials from the general library; (8) state assault and battery claims against Martuscello, Smith, and Miller; and (9) a Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim against the State of New York.  *See* Dkt. No. 9 at 39-40.

[4] The Court found the following three claims survived review in the FAC: (1) the Eighth Amendment conditions of confinement claim against Slaven; (2) the Fourteenth Amendment due process claim against Barringer regarding Plaintiff's infirmary confinement; and (3) the First Amendment retaliation claim against Slaven.  *See* Dkt. No. 39 at 16; Dkt. No. 91 at 5.

amend the FAC, Dkt. No. 77, which was granted on January 11, 2019.  Dkt. No. 91 at 17-18.[5]  In

the Second Amended Complaint ("SAC"), Plaintiff withdrew several claims[6] and no longer

asserted claims against Defendants Peter, Raymond, or Bradham.  *Id.* at 17-18 & n.6.  On

December 12, 2019, Plaintiff filed a Motion to Amend the SAC, Dkt. No. 137, which was granted

on March 12, 2020.  Dkt. No. 158.

Plaintiff filed the Third Amended Complaint ("TAC") on April 6, 2020.  Dkt. No. 159.[7]

On April 8, 2022, Defendants moved for summary judgment on all claims asserted in the TAC.

Dkt. No. 197.  Plaintiff opposed the motion.  Dkt. Nos. 202, 202-1, 202-2.  Defendants filed a

reply, and Plaintiff filed a sur-reply.  Dkt. Nos. 205, 206.  On February 28, 2023, United States

Magistrate Judge Thérèse Wiley Dancks issued a Report-Recommendation recommending that

defendant New York State be terminated from the docket, Defendants' motion for summary

judgment be granted, and Plaintiff's TAC be dismissed in its entirety.  *See* Dkt. No. 208 at 40.  On

---

[5] Plaintiff's motion was granted to the extent he sought to "(1) add allegations related to equitable tolling and assert an Eighth Amendment conditions-of-confinement claim against Huff; (2) broaden his First Amendment Free Exercise claims and assert them against Barringer, Kenneweg, Martuscello and Smith based on their allegedly denying Plaintiff access to legal materials; (3) amend his First Amendment retaliation claims against Martuscello, Barringer, Kenneweg, Smith, Wagner, Jackson, Barnes, Almasi, Arvidson, Annucci, Baldwin, Miller, Rizzi, and Slaven; (4) withdraw [certain claims];[] and (5) maintain the other claims in the FAC that Plaintiff has reasserted, and which were found to survive sua sponte review,[] with the exception of Plaintiff's RLUIPA claim . . .which is dismissed."  Dkt. No. 91 at 17-18.

[6] Plaintiff withdrew the following claims in the SAC: (1) Plaintiff's request for injunctive relief against Martuscello and Annucci in their official capacities with respect to restricted privileges; (2) his Eighth Amendment conditions-of-confinement claim against Slaven; (3) his First Amendment Free Exercise claim against Miller, Baldwin, and Rizzi; (4) his general library claim against Almasi (now asserted as a retaliation claim); (5) his state law assault and battery claims against Martuscello, Smith, and Miller; (6) his state law negligence claims against Martuscello, Smith, Miller, Baldwin, and Rizzi; and (7) his constitutional claim of denial of meaningful access to the courts.  *See* Dkt. No. 91 at 18 n.6.

[7] The TAC only replaced Barnes with Corrections Officer R. Davies and Barnes was dismissed as a defendant.  *See* Dkt. Nos. 158, 159.

March 29, 2023, Plaintiff filed Objections to the Report-Recommendation, and on April 12, 2023, Defendants filed a Memorandum of Law in Opposition to Plaintiff's Objections.  Dkt. Nos. 211, 212.

For the reasons set forth below, the Court rejects each of Plaintiff's Objections and adopts the Report-Recommendation in its entirety.

## II.     BACKGROUND

Familiarity with Plaintiff's allegations is presumed and only the facts most relevant to Defendants' motion for summary judgment are discussed below.[8]  Plaintiff was sentenced in 1997 to a prison term of twenty-five years to life for second degree murder and became eligible for parole in April 2021.  *See* Dkt. No. 91 at 1-2.  As he came closer to his parole eligibility date, Plaintiff maintained his innocence and asserted that he wanted to die by starvation rather than accept parole, and that he would rather die by starvation than be classified as a maximum-security B prisoner.  *See* Dkt. No. 197-5 at ¶¶ 35-37[9]; Dkt. No. 91 at 1-2.  On May 10, 2013, Plaintiff began a hunger strike in protest of his security classification changing from a maximum-security A inmate, which Plaintiff believed had more favorable living conditions, to a maximum security B inmate.  *See* Dkt. No. 197-5 at ¶¶ 31-32, 38-41.

Plaintiff was admitted to the Coxsackie infirmary on May 17, 2013, and alleges he was placed in a "very cold air-conditioned room" and he was deprived of sufficient blankets, clothing, toiletries, and personal property from his cell, as well as certain privileges including access to the law library and television.  *See* Dkt. No. 91 at 8-11; Dkt. No. 159 at ¶¶ 54-56, 77-94.  More specifically, Plaintiff alleges he was subjected to "cold temperature and degrading treatment" to

_____

[8] For a complete recitation of Plaintiff's allegations, the parties are referred to Dkt. Nos. 9, 39, 91, 197, and 208.

[9] References are to the undisputed paragraphs in Dkt. No. 197-5.

force him to quit his hunger strike, including being placed in a very cold, air-conditioned room with bed sheets and "one very thin blanket," only allowed "thin infirmary pajamas, the boots and underwear [he] had on, toilet paper, soap, [a] toothbrush and toothpaste," and his complaints were ignored.  *See* Dkt. No. 159 at ¶¶ 78-81; Dkt. No. 202 at ¶ 89.  Plaintiff also alleges that he was denied deodorant and lotion, "which meant [he] couldn't moisturize [his] lips which would crack and bleed."  *See* Dkt. No. 159 at ¶ 89.  Plaintiff further alleges that in July 2013 he was given two thin blankets and finally allowed his thermal underwear, sweatshirt, and winter hat.  *See* Dkt. No. 202-2 at ¶ 98.

On May 29, 2013, Plaintiff went into kidney failure, and, as a result, the Department of Corrections and Community Supervision ("DOCCS") obtained a force-feed order in June 2013.  *See* Dkt. No. 91 at 5-7; Dkt. No. 197-5 at ¶¶ 62-63.  Plaintiff claims that force feeding him goes against his religion-based belief that he should be allowed to die by starvation.  *See* Dkt. No. 159 at ¶¶ 48-53.  Plaintiff also alleges that the Coxsackie medical providers used "16 French" and "14 French" nasogastric ("NG") tubes to force feed him, which were too large and caused him injury, in retaliation for his hunger strike.  *See* Dkt. No. 91 at 8; Dkt. No. 197-5 at ¶ 66.  Plaintiff further alleges that he regularly placed the NG tube himself because he found Defendant Miller's attempts to place the feeding tube torturously painful.  *See* Dkt. No. 202-2 at ¶¶ 209-210.  On June 11, 2013, Plaintiff requested that smaller tubes be used.  *See* Dkt. No. 197-5 at ¶ 115.  Between June 15 and June 18, 2013, Plaintiff was eating and drinking so force feedings were not necessary, Dkt. No. 197-3 at ¶ 18, and on June 18, 2013, the smaller "12 French" NG tubes were used, Dkt. No. 197-5 at ¶ 119.

In the Report-Recommendation, Magistrate Judge Dancks construed Plaintiff's TAC liberally to assert the following claims: "(1) Eighth Amendment deliberate indifference claims

against Baldwin, Martuscello, Miller, Rizzi, and Smith arising out of the use of certain nasogastric tubes during force feedings; (2) Eighth Amendment conditions of confinement claims against Huff, Martuscello, and Smith for the conditions [Plaintiff] was subject to while in the infirmary; (3) First Amendment retaliation claims against Almasi, Annucci, Arvidson, Baldwin, Barringer, Davies, Kenneweg, Jackson, Martuscello, Miller, Rizzi, Slaven, Smith, and Wagner as a result of alleged conduct by these defendants in the infirmary during his hunger strike; (4) Fourteenth Amendment due process claims against Barringer, Martuscello, and Smith for [Plaintiff's] confinement to the infirmary; and (5) First Amendment free exercise claims against Annucci, Barringer, Kenneweg, Martuscello, and Smith for obtaining the force feed order and administering force feedings in violation of [Plaintiff's] sincerely held religious beliefs." Dkt. No. 208 at 6. Additionally, while no claims are asserted against New York State, it is still listed as an active party on the docket. *See generally* Docket.

## III.    STANDARD OF REVIEW

### A. Summary Judgment

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). "The 'mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff.'" *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (emphasis in original). In other words, "a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (quotation omitted). Moreover, the court "cannot try issues of

6

fact; it can only determine whether there are issues to be tried." *See Chambers*, 43 F.3d at 36-37

(quotation and citation omitted). "Any assessments of credibility and all choices between available

inferences are matters to be left for a jury, not matters to be decided by the Court on summary

judgment." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P.

56(c), (e)).

In assessing the record to determine whether any issues of material fact exist, the court is

required to resolve all ambiguities and draw all reasonable factual inferences in favor of the

nonmoving party. *See Chambers*, 43 F.3d at 36 (citing, *inter alia*, *Anderson*, 477 U.S. at 255).

Where a party is proceeding *pro se*, like here, the court must "read his supporting papers liberally,

and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14

F.3d 787, 790 (2d Cir. 1994); *accord Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). "However,

a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome

a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995)

(quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

### B.   Review of a Report-Recommendation

A district court reviews *de novo* those portions of a magistrate judge's report-

recommendation that have been properly preserved with a specific objection.   28 U.S.C.

§ 636(b)(1)(C).   "To be 'specific,' the objection must, with particularity, 'identify [1] the portions

of the proposed findings, recommendations, or report to which it has an objection and [2] the basis

for the objection.'"   *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in

original) (quoting N.D.N.Y. Local Rule 72.1(c)).   When a party files "[g]eneral or conclusory

objections, or objections which merely recite the same arguments [previously] presented to the

magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear

error.  *O'Diah v. Mawhir*, No. 9:08-CV-322 (TJM) (DRH), 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim).

"[I]n a *pro se* case, like here, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted).  The Second Circuit has held that courts are obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal."  *Machicote v. Ercole*, No. 06 Civ. 13320 (DAB) (JCF), 2011 WL 3809920, at *2, (S.D.N.Y. 2011) (citation omitted); *accord Caldwell v. Petros*, No. 1:22-cv-567 (BKS/CFH), 2022 WL 16918287, at *1 (N.D.N.Y. 2022).  After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]."  28 U.S.C. § 636(b)(1)(C).

## IV.  DISCUSSION

The Court finds that Plaintiff filed specific objections to the Report-Recommendation.  The Court therefore undertakes a *de novo* review of the findings of fact and conclusions in the Report-Recommendation.

**A.  New York State**

Magistrate Judge Dancks noted that Plaintiff's RLUIPA claim against New York State was dismissed and there are no other claims asserted against the State.  *See* Dkt. No. 208 at 9 (citing Dkt. No. 91 at 9, 13-16; Dkt. No. 195-5 at ¶¶ 3-24).  As such, the Court directs the Clerk to terminate New York State as a party to this action.

**B.  Abandonment of Due Process, Free Exercise, and Certain Retaliation Claims**

Magistrate Judge Dancks concluded that Plaintiff abandoned the following claims in the TAC by not opposing Defendants' motion for summary judgment with respect to them: (1) First Amendment free exercise claims against Annucci, Barringer, Kenneweg, Martuscello, and Smith; (2) Fourteenth Amendment due process claims against Barringer, Martuscello, and Smith for his confinement in the infirmary during his hunger strike; and (3) First Amendment retaliation claims against Annucci, Baldwin, Kenneweg, Miller, Rizzi, and Smith.  *See* Dkt. No. 208 at 9-11. Accordingly, the Court dismisses these claims with prejudice.  *See Wiggan v. New York City Dep't. of Correction,* No. 12-CV-1405, 2014 WL 4631456, at *3 (W.D.N.Y. Sept. 16, 2014) (granting summary judgment and dismissing certain claims, as abandoned, that a *pro se* inmate failed to address in response to the defendants' motion for summary judgment).

**C.  Conditions of Confinement**

Plaintiff alleges Eighth Amendment conditions of confinement claims against Huff, Martuscello, and Smith "from the prolonged confinement [in the infirmary] without warm clothing, underwear, and sufficient blankets, in order to use cold temperature as a weapon" to force Plaintiff to quit his hunger strike.  *See* Dkt. No. 208 at 13, 15 (citing Dkt. No. 159 at 169; Dkt. No.

202 at ¶ 89).[10]

### 1. Objective Prong of an Eighth Amendment Conditions of Confinement Claim

First, Magistrate Judge Dancks concluded that nothing in the record supports a finding that Plaintiff's allegations regarding his treatment in the infirmary meets the objective prong of an Eighth Amendment conditions of confinement claim.[11]  Specifically, Magistrate Judge Dancks concluded that Plaintiff's allegations that he was subjected to a "very cold, air-conditioned room in the infirmary with the benefit of only two blankets, sheets, and pajamas" and that he was denied a change of underwear for four days or lotion for approximately one month were insufficient to state an Eighth Amendment conditions of confinement claim.  *See* Dkt. No. 208 at 16-18.[12]

---

[10] The constitutional prohibition against cruel and unusual punishment includes the right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  To establish an Eighth Amendment claim based on unsafe or medically inappropriate living conditions, a plaintiff must establish that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety.  *Id.* at 834.  "The deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

[11] Under the objective standard, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation.  *Hathaway*, 37 F.3d at 66 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)).  An inmate must show "that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

[12] Magistrate Judge Dancks cited to several cases rejecting Eighth Amendment claims where the plaintiffs had alleged that they were kept in cold conditions for several days.  *See, e.g., White v. Smith*, No. 9:17-CV-1094 (LEK/ATB), 2021 WL 5989600, at *8 (N.D.N.Y. Oct. 15, 2021); *Walker v. Schriro*, No. 11-CV-9299, 2013 WL 1234930, at *12-13 (S.D.N.Y. Mar. 26, 2013); *Borges v. McGinnis*, No. 03-CV-6375, 2007 WL 1232227, at *4-5 (W.D.N.Y. Apr. 26, 2007).  Similarly, Magistrate Judge Dancks cited cases rejecting Eighth Amendment claims where the plaintiff alleged that he was denied a change of underwear for fifteen days, *see McCorkle v. Walker*, 871 F. Supp. 555, 557 (N.D.N.Y. 1995), and where the plaintiff alleged that he was denied lotion for twenty-six days, *see Cusamano v. Carlsen,* No. 9:08-CV-755 (FJS) (GHL), 2011 WL 7629512, at *9.

Plaintiff admitted he "had underwear, pajamas, boots, sheets, and blankets," and that he was provided a second blanket his first night in the infirmary after complaining he was cold. *See* Dkt. No. 208 at 18. Plaintiff was also provided with extra blankets, thermal underwear, a sweatshirt, and a winter hat by July 2013. *Id.*

Plaintiff objects to Magistrate Judge Dancks' finding that these conditions of confinement do not meet the objective prong of the Eighth Amendment standard. *See* Dkt. No. 211 at 8. Plaintiff argues: (1) the Court erred in finding that Plaintiff was only subjected to cold temperatures, without warm clothing for four days, instead of a little over two months;[13] (2) he was only given very thin blankets; (3) the conditions caused him to feel "physically tortured;" and (4) the cases relied upon by Magistrate Judge Dancks, except for *Gaston v. Coughlin*,[14] differ significantly from his based on the amount of time he was subjected to the cold. *Id.* at 8-13 (citing Dkt. No. 8 at 16). Plaintiff contends that if Magistrate Judge Dancks had drawn the proper inferences from his evidence, she should have denied summary judgment on Plaintiff's conditions of confinement claim. *Id.* at 12-13. Defendants reply that there is no evidence in the record that objectively establishes the conditions to which Plaintiff claims he was subjected, and Plaintiff's Declaration estimating the temperature in the infirmary is insufficient to create an issue of fact. *See* Dkt. No. 212 at 4-5.

Magistrate Judge Dancks first addressed Plaintiff's claim that he was subject to extreme cold for the first four days he spent in the infirmary. She correctly found that the conditions of

---

[13] Plaintiff includes with his Objections a Declaration where he states that it is his belief "without the benefit of a thermometer," that the temperature he was subject to in the infirmary isolation room from May to August 2013, except on rainy or very humid days, was "around 45 Degrees Fahrenheit." *See* Dkt. No. 211 at 39.

[14] In *Gaston v. Coughlin*, 249 F.3d 156 (2d Cir. 2001), the prisoner was subjected to very cold temperatures for five months and the Court concluded that such prolonged exposure could state a claim under the Eighth Amendment. *Id.* at 164.

Plaintiff's confinement during that period, during which he alleges he was subjected to an air-conditioned room with only two blankets, sheets, and pajamas, do not violate contemporary standards of decency and therefore do not rise to the level of an Eighth Amendment violation. *See* Dkt. No. 208 at 15-16. Magistrate Judge Dancks also addressed Plaintiff's allegation that he was denied warmth over a prolonged period. *Id.* at 17-19. She noted that "Plaintiff chose to go on the hunger strike and that weight loss and temporary discomfort are consequences of refusing to eat." *Id*. at 17 (citing *Stevens v. Cuomo*, No. 9:21-CV-0306 (GLS/ML), 2021 WL 3165364, at *5 (N.D.N.Y. July 27, 2021) (citing *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011) ("[I]f weight loss and temporary discomfort are the only consequences of refusing to eat, then the inmate's choice to go on a hunger strike raises no Eighth Amendment concern." (citations omitted)); *Green v. Phillips*, No. 04-CV-10202, 2006 WL 846272, at *5 (S.D.N.Y. Mar. 31, 2006) (dismissing Eighth Amendment claim because the plaintiff chose to go on the hunger strike and the symptoms did not rise to the level of a "sufficiently serious" condition, *i.e.*, "a condition of urgency, one that may produce death, degeneration, or extreme pain" and were to be expected by someone who does not eat). As such, Magistrate Dancks found that the coldness Plaintiff experienced over a period of time did not rise to the level of an Eighth Amendment violation. *Id*. Further, Magistrate Judge Dancks set forth the clothes, sheets, blankets, and personal items that Defendants provided to Plaintiff when he was in the infirmary and concluded that none of the deprivations alleged by Plaintiff "rose to an acute or conscience-shocking level, either alone or in combination." *Id.* at 15, 18-19 (citing Dkt. No. 202-2 at ¶¶ 98, 118, 136-37).

The Court does not find that Magistrate Judge Dancks overlooked any evidence in the record to suggest that the conditions of confinement to which Plaintiff was exposed could constitute cruel and unusual punishment under the Eighth Amendment. Plaintiff has not pointed

to any evidence in the record that would lead the Court to disturb Magistrate Judge Dancks' finding that there was no violation of the objective prong of the Eighth Amendment conditions of confinement standard.

### 2.  Subjective Prong of the Eighth Amendment Conditions of Confinement Standard

Second, Magistrate Judge Dancks concluded that the record did not support a finding that Plaintiff's allegations met the subjective prong[15] of the Eighth Amendment conditions of confinement standard as Plaintiff did not provide evidence that Huff, Martuscello, and Smith purposefully deprived him of warmth or that they were deliberately indifferent to his health and welfare.  *See* Dkt. No. 208 at 19.[16]

Plaintiff objects to Magistrate Judge Dancks' finding that he presented no evidence to support the allegations that Huff, Martuscello, and Smith acted purposefully or with deliberate indifference to deprive him of warmth.  *See* Dkt. No. 211 at 6 (citing Dkt. No. 208 at 19).  Plaintiff states that there was evidence in the record that he was denied "minimum state property rights," suffered sufficient weight loss and coldness due to not eating, and complained of torture, and that a reasonable juror could infer from this evidence that Defendants acted purposefully to deny Plaintiff warm clothing over a period of months.  *See* Dkt. No. 211 at 6-8 (citing Dkt. No. 202-2 at ¶¶ 101-09 & Ex. 30).  Defendants reply that there is no record evidence showing that they acted

---

[15] The subjective prong of the Eighth Amendment standard focuses on whether a defendant official acted with "a sufficiently culpable state of mind."  *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citation omitted).  "'Deliberate indifference' requires more than negligence, but less than conduct undertaken for the very purpose of causing harm."  *Farmer*, 511 U.S. at 835.  In order for a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an inmate's health or safety.  *See Hathaway*, 37 F.3d at 66.

[16] *See also Lewis v. Zon*, 920 F. Supp. 2d 379, 389 (W.D.N.Y. 2013) (noting that the plaintiff's "voluntary" engagement in a hunger strike "undercuts his claim of deliberate indifference") (citation omitted).

with a culpable state of mind.  *See* Dkt. No. 212 at 5.

Magistrate Judge Dancks' conclusion that Plaintiff failed to meet the subjective prong of the Eighth Amendment standard is fully supported by the record.  Plaintiff adduced no evidence in his Declaration that Huff, Martuscello, and Smith purposefully or with deliberate indifference deprived him of warmth, and his objections fail to point to any evidence in the record that was not considered and could create an inference of the requisite state of mind.  *See Jabbar v. Fischer,* 683 F.3d 54, 57 (2d Cir. 2012) (stating that to satisfy the subjective requirement of an Eighth Amendment claim, a "prison official must know of, and disregard, an excessive risk to inmate health or safety").  In fact, Plaintiff states that when he complained of weakness and coldness to Registered Nurse McCarthy, he was "given an extra blanket."  *See* Dkt. No. 202-2 at ¶ 103. Plaintiff's statement that "he felt physically tortured" and allegations that he was denied warmth over a period of two months are insufficient to show that Defendants deliberately knew of and disregarded an excessive risk to Plaintiff's health.  *See, e.g.*, *Brown v. McElroy*, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001) (finding Plaintiff's conditions did not involve "wanton and unnecessary infliction of pain" where Plaintiff "admit[ted] that he was able to get warm with some blankets" and did "not claim he was without clothing").  Therefore, the Court disagrees with Plaintiff's objection that he has set forth sufficient facts to satisfy the subjective prong of the Eighth Amendment conditions of confinement standard.

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment conditions of confinement claims against Huff, Martuscello, and Smith.

### C.  Deliberate Indifference Claim Under the Eighth Amendment

Plaintiff alleges that Martuscello and Smith, along with medical personnel Dr. Miller,

Nurse Administrator Baldwin, and Nurse Rizzi, violated his Eighth Amendment rights by "repeatedly force feeding the plaintiff with a too-large [NG] tube, without anesthetic," in order to force Plaintiff to eat regularly.  *See* Dkt. No. 202-2 at ¶¶ 2, 10, 12-95, 227.

### 1.   Deliberate Indifference to Plaintiff's Medical Needs

Magistrate Judge Dancks concluded that Plaintiff's disagreement with Defendants' medical decisions to use "16 French" and "14 French" NG tubes for his force feedings does not provide a basis for an Eighth Amendment deliberate indifference claim.  *See* Dkt. No. 208 at 27; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   Magistrate Judge Dancks noted that Defendants later used "12 French" NG tubes after Plaintiff experienced swelling from the larger feeding tubes, and even if the decisions to use the "16 French" and "14 French" NG tubes caused Plaintiff unintended harm, tortious conduct of this type is not actionable under § 1983.  *See* Dkt. No. 208 at 21, 26-27, 29-30 (citing Dkt. No. 197-5 at ¶¶ 80-82, 117-120); *see also Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  Moreover, Magistrate Judge Dancks found that the "Declaration of Jon Wesley Boyd in Support of Testifying as an expert witness for the Plaintiff," *see* Dkt. No. 123-1, failed to raise a material issue of fact, because Boyd's proposed testimony that force feeding is "unethical" is irrelevant to this action, and his proposed testimony on the size of the NG tube and use of topical anesthetic was at most a difference of medical opinion.  *See* Dkt. No. 208 at 27-29.[17]

As to the claim that Defendants' force feeding violated his Eighth Amendment rights, Plaintiff states in his Objections that his evidence satisfies both the objective standard of showing extreme pain and the subjective standard of showing that Defendants' actions were wanton and malicious.  *See* Dkt. No. 211 at 9-11.  Plaintiff argues that Magistrate Judge Dancks committed

---

[17] *See also Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (disagreements over medication, diagnostics, forms of treatment, and the need for specialists are not adequate grounds for a § 1983 medical indifference claim).

error when she concluded that Plaintiff's evidence amounted to nothing more than a difference of opinion. *Id.* at 11 (citing Dkt. No. 208 at 29-30). Plaintiff acknowledges that Defendants were required to force feed him but asserts that the manner in which the force feeding took place constituted deliberate indifference to his suffering. *Id.* Plaintiff again relies on Dr. Wesley's Declaration, *see* Dkt. No. 123-1, in support of these objections. *Id.* at 11-12. According to Plaintiff, the use of "16 French" and "14 French" NG Tubes was more than negligence because "non-painful means were readily available, and just as effective to force feed." *Id.* at 16 (citing Dkt. No. 202-2 at ¶¶ 192-95 & Ex. 42). Plaintiff further states that he produced evidence which raised genuine issues of material fact, for example, that the "16 French" and "14 French" NG tubes were not the smallest size available at the time they were used, and asserts that a jury should decide whether Defendants acted with the requisite state of mind. *Id.* at 12-14 (citing Dkt. No. 202-2 at ¶¶ 147-228 & Ex. 47).

Defendants respond that the standard for an Eighth Amendment deliberate indifference claim is indifference to a "serious medical need," and Plaintiff's subjective standard of pain and suffering does not create an issue of fact as to Defendants' state of mind. *See* Dkt. No. 212 at 7-8.[18] Defendants argue that neither Plaintiff's difference of opinion with Defendants with respect to his course of treatment nor a difference of medical opinion between Plaintiff's purported medical expert and Defendants amounts to an Eighth Amendment medical indifference claim. Defendants further argue that Plaintiff did not show that smaller size NG tubes were available at

---

[18] *See Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (noting that the subjective prong of the deliberate indifference standard requires a showing that the defendant official acted with a "sufficiently culpable state of mind" such as deliberate indifference to inmate health or safety) (quoting *Hathaway*, 37 F.3d at 66) (citations omitted)).

the time Plaintiff was subjected to force feedings.  *Id*. [19]

The Court agrees with Defendants that Plaintiff's showing that Defendants were deliberately indifferent to his medical needs based on force feedings is insufficient as a matter of law.  The Court further finds that Plaintiff has not cited to any evidence that Magistrate Judge Dancks overlooked and that is material to his deliberate indifference claim.  Accordingly, the Court finds that Magistrate Judge Dancks correctly recommended that Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment deliberate indifference claims against Martuscello, Smith, Miller, Baldwin, and Rizzi be dismissed.

### 2.  Statute of Limitations

Magistrate Judge Dancks also concluded that Plaintiff's claims as to the force feedings with the "16 French" and "14 French" NG tubes were barred by the statute of limitations, because Plaintiff knew or had reason to know of the harm of these force feedings by June 15, 2013 and did not file his claim within the three-year statute of limitations.  *See* Dkt. No. 208 at 22-23.[20] Magistrate Judge Dancks rejected Plaintiff's argument that he is entitled to equitable tolling of the statute of limitations[21] based on Plaintiff's allegations that he was deprived access to legal materials and resources and that he had not exhausted his administrative remedies through his filing in state court.  *See* Dkt. No. 208 at 23-25; *see also Fennel v. Artuz,* 14 F. Supp. 2d 374, 377

---

[19] Defendants argue that Plaintiff's reliance on Exhibit 47, *see* Dkt. No. 202-4 at 154-56, is misplaced because it does not say anything about the availability of different sizes of NG Tubes during the time of Plaintiff's force feedings.  *See* Dkt. No. 212 at 8.

[20] The statute of limitations for § 1983 actions is three years after the Plaintiff's cause of action accrued.  *Owens v. Okure*, 488 U.S. 235, 240-41 (1989).

[21] Equitable tolling is available in "rare and exceptional" cases where "extraordinary circumstances prevented a party from timely performing a required act," and "the party acted with reasonable diligence throughout the period" to be tolled.  *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (internal quotation marks omitted).

(S.D.N.Y. 1997) (unfamiliarity with law or legal procedure is insufficient to equitably toll the statute of limitations); Dkt. No. 159 at 15 (Plaintiff alleged in the TAC that he had exhausted his administrative remedies before filing the complaint).[22]

Plaintiff objects to Magistrate Judge Dancks' conclusion that his force feedings claim is barred by the statute of limitations.  *See* Dkt. No. 211 at 18-30.  Plaintiff argues that the statute of limitations should have been equitably tolled because he was subjected to "extraordinary circumstances" consisting of Defendants purposefully violating state law and prison facility rules over an extended period of time from February 2014 to July 2018 that resulted in his law library access being severely restricted.  Specifically, Plaintiff contends that Magistrate Judge Dancks failed to address his showing that he exercised due diligence to overcome Defendants' efforts to restrict his access to a law library.  *Id.* at 20-21.  He claims that Defendants' actions violated the First Amendment by restricting his access to the courts and that Magistrate Judge Dancks failed to address this issue directly and instead framed it in the context of equitable tolling of the statute of limitations.  *Id.* at 23-24.  Plaintiff also objects on the grounds that the cases cited by the Court are inapposite, the Court failed to consider tolling issues under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and it would be unfair to not equitably toll the statute of limitations because Defendants were aware of his accusations since November 2014.  *Id.* at 21-26.  In response, Defendants argue that there is no legal or equitable basis to conclude that Plaintiff was subject to "extraordinary circumstances" that justify equitable tolling.  *See* Dkt. No. 212 at 6-7.

Plaintiff does not dispute that he knew or should have known of the harm from his force

---

[22] Magistrate Judge Dancks recommended that Plaintiff, as a *pro se* litigant, be "allow[ed] one final opportunity to demonstrate his entitlement to equitable tolling during the time period he was 'actively' exhausting his administrative remedies on his Eighth Amendment deliberate indifference claims in any objection [Plaintiff] may choose to file to the report-recommendation." *See* Dkt. No. 208 at 25 n.11.

feedings by June 2013 and that, absent equitable tolling, the statute of limitations ran in June 2016. *See* Dkt. No. 208 at 22-23 (discussing three-year statute of limitations for § 1983 claims).[23] Moreover, the Court finds that Plaintiff has not demonstrated a basis for equitable tolling insofar as he was required to pay for his legal research,[24] and further finds that his argument regarding the AEDPA is irrelevant to this matter.

The Court, however, finds for the purposes of equitable tolling that Plaintiff has raised a material issue of fact as to whether he was denied reasonable access to the law library over an extended period of time and whether he exercised due diligence in pursuing access despite the denial. *See* Dkt. No. 211 at 20-21 (citing Dkt. No. 201-1 at 18-21; Dkt. No. 202-2 at ¶¶ 15-95 & exhibits). However, because Plaintiff has failed to state a claim of deliberate indifference with respect to his force feedings, his claim must still be dismissed.

### D. First Amendment Retaliation Claims

Plaintiff asserts two First Amendment retaliation claims:[25] (1) "retaliating for grievances against defendants Almasi, Arvidson, Slaven, and Wagner arising out of separate instances" and (2) "retaliating for filing remote control grievance against defendants Jackson, Davies,

---

[23] Plaintiff does not raise an objection to Magistrate Judge Dancks' rejection of his argument that he mistakenly believed filing his claims in state court preserved them for federal § 1983 review until the state court proceedings were totally exhausted. *See* Dkt. No. 208 at 23 (citing Dkt. No. 202-2 at ¶ 59); *compare* Dkt. No. 211 at 21-23 (characterizing Plaintiff's argument as based not on his mistake but rather on Defendants' persistent misconduct denying him access to the law library). Nor does he raise an objection that the statute of limitations should be equitably tolled because he was exhausting his administrative remedies. *See* Dkt. No. 208 at 24-25 & n.11.

[24] *See* Dkt. No. 212 at 6 (noting that Plaintiff was required to pay for copying costs of legal materials, not the ability to conduct legal research) (citing Dkt. No. 202-3, Ex. 21).

[25] "To prevail on a First Amendment retaliation claim, an inmate must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action." *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (internal quotations and citations omitted).

Martuscello, and Barringer arising out of two connected instances" in violation of the First Amendment.  *See* Dkt. No. 202-1 at 7-8.[26]

As to the first retaliation claim, Plaintiff alleges that Almasi, Arvidson, Slaven, and Wagner retaliated against him as follows: (1) Almasi provided him with no books after he filed a grievance for only receiving one book a day while in the infirmary; (2) Arvidson used his authority and threat of violence to hold him captive in his bed for 5 minutes, which prevented Plaintiff from using the toilet; (3) Slaven decreased his recreation time by two hours and attempted to create animosity with another incarcerated individual, Salvatore DeJesus, by telling DeJesus that Plaintiff said he was a sex offender and by searching DeJesus' cell and blaming Plaintiff for the search; and (4) Wagner closed the dayroom early on certain occasions, hid the remote control for the dayroom television, did not allow Plaintiff out of his cell to watch movies, withheld non-legal mail, and kicked the dayroom door daily.  *See* Dkt. No. 208 at 34-39.

As to the second retaliation claim, Plaintiff alleges that Jackson and Davies retaliated against him by taking and/or destroying the television remote control from the infirmary, and that Martuscello, the Superintendent, and Barringer, the Deputy Superintendent of Programs, retaliated against him by not timely replacing the television remote control in the infirmary dayroom and failing to effectively address Plaintiff's written and verbal complaints.  *See* Dkt. No. 208 at 39 (citing Dkt. No. 202-2 at ¶¶ 311-12).

Magistrate Judge Dancks concluded that Plaintiff's allegations as to Almasi, Arvidson, Slaven, Wagner, Jackson, Davies, Martuscello, and Barringer do not give rise to the level of

---

[26] Magistrate Judge Dancks liberally construed the TAC as asserting First Amendment retaliation claims against all Defendants except Huff.  *See* Dkt. No. 208 at 32.  As noted above, Plaintiff abandoned his retaliation claims against Annucci, Baldwin, Kenneweg, Miller, Rizzi, and Smith. *See id.*; Dkt. No. 202-1 at 7-8.

adverse action which would deter a similarly situated individual from exercising his constitutional rights.  *See* Dkt. No. 208 at 33-39.  Magistrate Judge Dancks noted that the court must be "[m]indful that inmates 'may be required to tolerate more than average citizens [] before a retaliatory action taken against them is considered adverse.'"  Dkt. No. 208 at 36 (citing *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)).

Plaintiff objects generally that Magistrate Judge Dancks failed to properly consider the conditions to which the plaintiff was subjected when she considered the kinds of actions that would deter a similarly situated individual from exercising his constitutional rights.  *See* Dkt. No. 211 at 26-28.  Plaintiff argues more specifically that he presented sufficient evidence to show a causal connection between defendant Slaven's reduction of his recreation time and protected conduct and that, considering the context, Slaven's actions, including the cell search of inmate DeJesus, should be considered sufficiently adverse to implicate constitutional protections.  *Id.* at 28-31.  As to Almasi, Plaintiff claims that he made his cell situation worse, including forcing Plaintiff to pay hundreds of dollars to buy books he otherwise would have received from the library, and that such action constituted adverse action.  *Id.* at 31-32.  As to Wagner, Plaintiff argues that if his conduct were viewed cumulatively (even though Wagner allegedly "retaliated in different ways"), it would be sufficient to constitute adverse action.  *Id.* at 32-33.  With respect to Arvidson, Plaintiff claims that his actions were more than verbal threats or denial of a bathroom and instead amounted to false imprisonment which should have constituted adverse action.  *Id.* at 33-34.  Finally, as to Jackson, Davies, Barringer, and Martuscello, Plaintiff argues that he suffered adverse action sufficient to trigger a retaliation claim when his privileges were taken away after voicing grievances.  *Id.* at 34-36.

In response, Defendants argue that there is no basis for Plaintiff's assertion that Magistrate

Judge Dancks did not consider the context in which the alleged retaliations occurred, the determination of whether retaliatory action is adverse action is a matter of law, and each claim of retaliatory conduct is separate and, therefore, should be viewed separately. *See* Dkt. No. 212 at 8-9.

Magistrate Judge Dancks found that each of the Defendants who are alleged to have retaliated against Plaintiff for his filing grievances (Wagner, Almasi, Slaven, and Arvidson), and for taking the television remote control or not effectively addressing Plaintiff's complaints about the remote control (Jackson, Davies, Barringer, and Martuscello), did not take adverse action that could constitute retaliation in violation of Plaintiff's constitutional rights. *See* Dkt. No. 208 at 33-40. The Court rejects Plaintiff's objections that the context of his incarceration in the infirmary coupled with the nature of each Defendant's conduct raises a material issue of fact as to whether he was subject to retaliation for protected activity. The Court finds that Magistrate Judge Dancks properly considered and addressed these claims in the Report-Recommendation.

Accordingly, the Court finds that Magistrate Judge Dancks correctly determined that Defendants are entitled to summary judgment as to Plaintiff's First Amendment retaliation claims against Almasi, Arvidson, Slaven, Wagner, Jackson, Davies, Martuscello, and Barringer.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 208, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that the Clerk be directed to revise the docket to terminate defendant New York State; and the Court further

**ORDERS** that Defendants' motion for summary judgment, Dkt. No. 197, be **GRANTED;** and the Court further

**ORDERS** that Plaintiff's Third Amended Complaint, Dkt. No. 159, be **DISMISSED** in its entirety; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules and close the case.

**IT IS SO ORDERED.**

Dated:  May 1, 2023
       Albany, New York

Anne M. Nardacci
U.S. District Judge